File No. 18.5457

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE GENERAL INSURANCE COMPANY and NATIONWIDE MUTUAL INSURANCE COMPANY, | )<br>)<br>)<br>) |
| *Plaintiffs*, | )<br>) Case No. 25 CV 12064 |
| v. | )<br>) |
| THE ANATOMICAL GIFT ASSOCIATION, WILLIAM O'CONNOR, and JENNIFER IRVING, | )<br>)<br>)<br>) |
| *Defendants*. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME the Plaintiffs, NATIONWIDE GENERAL INSURANCE COMPANY ("Nationwide General") and NATIONWIDE MUTUAL INSURANCE COMPANY ("Nationwide Mutual") (together "Nationwide"), by and through their attorneys, Elizabeth N. Jedrasek and Christopher J. Pickett of Lindsay, Pickett, & Postel, LLC, and for their Complaint for Declaratory Judgment, pursuant to 28 U.S.C. §2201, against the Defendants, THE ANATOMICAL GIFT ASSOCIATION (the "AGA"), WILLIAM O'CONNOR ("O'Connor"), and JENNIFER IRVING ("Irving"), states as follows:

### INTRODUCTION

1. Nationwide seeks a declaration that it does not owe any duty to defend or indemnify the AGA and O'Connor with respect to the underlying lawsuit filed by Irving in the Circuit Court of Cook County, Illinois, Case No. 2025 L 006220 (the "underlying lawsuit"). The underlying lawsuit seeks damages for Irving's emotional distress and mental anguish caused by the AGA's alleged mishandling of the remains of Irving's father. Nationwide seeks a declaration that it does not owe any duty to defend or indemnify the AGA or O'Connor because the underlying lawsuit

does not allege any covered injury occurring during the Nationwide policy period as required to trigger coverage under the relevant policies.

## THE PARTIES

2. Nationwide General is an Ohio corporation with its principal place of business located in Ohio, and it is therefore a citizen of the State of Ohio.

3. Nationwide Mutual is an Ohio corporation licensed as a mutual insurance company under the laws of the State of Ohio with its principal place of business located in Ohio, and it is therefore a citizen of the State of Ohio.

4. The AGA is a corporation organized under the laws of the State of Illinois with its principal place of business located in Illinois, and it is therefore a citizen of the State of Illinois.

5. O'Connor resides in Illinois and intends to remain residing in Illinois and is therefore a citizen of the State of Illinois.

6. Irving resides in Illinois and intends to remain residing in Illinois and is therefore a citizen of the State of Illinois. Irving is named herein only because she may be deemed a necessary party with an interest in the subject matter of this action. Nationwide seeks no relief from Irving other than to the extent, if any, that she is interested in the subject matter of this action, that she be bound by the judgment sought herein. If Irving will sign a stipulation to that effect, then Nationwide will voluntarily dismiss her as a defendant.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Nationwide and the defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the Northern District of Illinois, Eastern Division.

9. This Court has personal jurisdiction over the AGA, O'Connor, and Irving because they are citizens of Illinois.

10. An actual controversy exists between the parties, and pursuant to 28 U.S.C. §2201, this Court has the authority to grant the relief requested.

## THE UNDERLYING LAWSUIT

11. On May 12, 2025, Irving filed the underlying lawsuit against the AGA and O'Connor. The underlying lawsuit seeks damages for emotional distress and mental anguish caused by the AGA's alleged mishandling of the remains of Irving's father. A true and correct copy of the Complaint filed in the underlying lawsuit is attached hereto as **Exhibit A**.

12. The Complaint alleges that on May 21, 2023, the AGA entered into a contract with John Trask (the "Deceased"), wherein the AGA agreed to receive, prepare, preserve, and distribute his remains. **Exhibit A**, ¶ 6.

13. The Complaint alleges that the AGA received the Deceased's body on or about May 22, 2023 and, upon information and belief, a body mislabeled as the Deceased's was sent to Midwestern University's Chiropractic School. *Id*. ¶¶ 9, 11.

14. The Complaint alleges that over one year later, on June 5, 2024, Irving received a letter from the AGA confirming that the Deceased had completed his benefit to the medical school, and that the AGA would return his remains to Irving at her request. *Id*. ¶¶ 16-17.

3

15. The Complaint further alleges that despite Irving's repeated inquiries thereafter, O'Connor and other AGA employees were unable to provide Irving with information regarding the status of the Deceased's remains. *Id*. ¶ 18.

16. The Complaint alleges that on July 23, 2024, Irving spoke to an employee of the AGA who told her that they had found her father's remains, and O'Connor then informed her that the remains had been shipped to her residence. *Id*. ¶¶ 19-21.

17. The Complaint goes on to allege that in subsequent conversations with O'Connor, O'Connor informed Irving that the Deceased's remains had actually been lost. *Id*. ¶ 22.

18. The Complaint alleges that on July 24, 2024, Irving received remains purported to be those of the Deceased and, on July 29, 2024, O'Connor reported to Irving that the Deceased's body tested positive for Hepatitis B. *Id*. ¶¶ 24, 26.

19. The Complaint alleges that, upon information and belief, the body that tested positive for Hepatitis B and that was sent to Midwestern University's Chiropractic School was not the Deceased's body. *Id*. ¶ 28.

20. The Complaint alleges that Irving received the remains of the unknown person that tested positive for Hepatitis B and, to date, the whereabouts of her father's remains are unknown. *Id*. ¶¶ 33-34.

21. The underlying lawsuit seeks damages for Irving's mental anguish and severe emotional distress resulting from the alleged mishandling of the Deceased's remains.

22. The underlying lawsuit alleges causes of action against the AGA and O'Connor for negligence, willful and wanton conduct, and breach of contract.

## THE NATIONWIDE POLICIES

23. Nationwide General issued a Businessowners policy to the AGA, Policy No. ACP BP013210674684, effective January 21, 2023, to January 21, 2024, and with liability limits of $1,000,000 per occurrence (the "BOP"). Nationwide Mutual issued a Commercial Umbrella policy to the AGA, Policy No. ACP CU013210674684, effective January 21, 2023, to January 21, 2024, and with liability limits of $5,000,000 per occurrence (the "Umbrella policy") (together the "Nationwide policies" or the "Policies"). True and correct copies of the Nationwide policies are attached hereto as **Exhibit B**.

24. The BOP was non-renewed effective January 1, 2024.

25. The Umbrella policy was non-renewed effective January 21, 2024.

26. The Nationwide policies are intended to be interpreted as a whole, but for the convenience of the Court and counsel, Nationwide sets forth certain pertinent provisions.

27. There may be other pertinent provisions in the Policies, and Nationwide reserves the right to plead them in the future.

*The BOP*

28. The BOP provides, in relevant part:

> **PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM**
>
> \*\*\*
>
> **I.    COVERAGES**
>
> **A.    COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.    INSURING AGREEMENT**
>
> a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

5

>> We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.
>
> HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> ***
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period[.]
>
> ***

**2.     EXCLUSIONS**

> This insurance, including any duty we have to defend "suits", does not apply to:
>
> a. **Expected Or Intended Injury**
>
>> "Bodily injury" or "property damage" which is expected or intended by the insured.
>>
>> This exclusion applies even if the resulting "bodily injury" or "property damage":
>>
>>> (1) Is of a different kind, quality or degree than initially expected or intended; or
>>>
>>> (2) Is sustained by a different person, entity, real property, or personal property than that initially expected or intended.
>
> ***
>
> b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement[.]

\*\*\*

V. **DEFINITIONS**

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

\*\*\*

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \*

29. The BOP further contains a Funeral Home Extra Endorsement which modifies the insurance provided under the Businessowners Liability Coverage Form and provides, in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FUNERAL HOME EXTRA ENDORSEMENT**

This endorsement modifies insurance provided under the following:
**PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM**
**PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM**

\*\*\*

B. **AMENDMENTS TO THE LIABILITY COVERAGE FORM**

1. In Section I. COVERAGES, under both COVERAGE A. and COVERAGE B., the following is added to the Insuring Agreements:

This insurance also applies to "bodily injury", "property damage", "personal and advertising injury", as those terms apply, or any other

7

injury arising out of the rendering of or the failure to render professional services as a funeral director, but only in connection with your business.

This insurance includes service performed by you as a member of a formal accreditation, standards review or similar professional board or committee.

For the coverage provided by this endorsement, the definition of "occurrence" is amended to include any act or omission arising out of the rendering of or the failure to render professional services as a funeral director.

2. In Section I. COVERAGES, A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under 2. EXCLUSIONS, Paragraph b. is replaced by the following:

This insurance, including any duty we have to defend "suits", does not apply to:

b. "Bodily injury", "property damage" or other injury for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

\*\*\*

4. In Section I. COVERAGES, under both COVERAGE A. and COVERAGE B., the following is added to 2. EXCLUSIONS:

\*\*\*

In addition to "bodily injury", "property damage" and "personal and advertising injury", as those terms apply, the exclusions in Section I. COVERAGES also apply to any other injury.

\* \* \* \*

*The Umbrella Policy*

30. The Umbrella policy provides, in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

8

1. **Insuring Agreement**

    a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend.\*\*\*

    b.  This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

    \*\*\*

2. **Exclusions**
    This insurance does not apply to:

    a.  **Expected Or Intended Injury**
        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b.  **Contractual Liability**
        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.\*\*\*

    \* \* \* \*

31. The BOP is listed in the Umbrella policy's Declarations under the Schedule of "underlying insurance."

9

32. The Umbrella coverage is subject to all the terms, conditions, and exclusions of the underlying BOP.

### Count I
### No Duty to Defend or Indemnify
### the AGA Under the BOP

33. Nationwide General incorporates by reference paragraphs 1 through 29, as if set forth fully herein.

34. Nationwide General does not owe a duty to defend or indemnify the AGA under the BOP with respect to the underlying lawsuit, for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. The underlying lawsuit does not allege any covered injury occurring during the BOP policy period;
   b. The underlying lawsuit does not allege any covered injury occurring during the BOP policy period and caused by an "occurrence";
   c. The "expected or intended" injury exclusion would apply to bar coverage for any allegations of willful or wanton conduct; and
   d. The "contractual liability" exclusion would apply to negate any coverage for the underlying lawsuit's breach of contract claim that may otherwise apply.

35. To the extent there are other bases upon which Nationwide General can properly deny coverage, Nationwide General reserves the right to plead them in the future.

36. The above contentions of Nationwide General are disputed by the AGA.

37. Thus, an actual controversy exists between the parties, and pursuant to 28 U.S.C. §2201, this Court is empowered to declare the rights and obligations of the parties.

WHEREFORE, Plaintiff, NATIONWIDE GENERAL INSURANCE COMPANY, prays that this Honorable Court enter an Order finding and declaring that it does not owe a duty to defend or indemnify Defendant THE ANATOMICAL GIFT ASSOCIATION against the allegations of

the underlying lawsuit under the BOP, and for such other and further relief as this Court deems fair and just under circumstances.

## Count II
### No Duty to Defend or Indemnify
### O'Connor Under the BOP

38. Nationwide General incorporates by reference paragraphs 1 through 29, as if set forth fully herein.

39. Nationwide General does not owe a duty to defend or indemnify O'Connor under the BOP with respect to the underlying lawsuit, for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. The underlying lawsuit does not allege any covered injury occurring during the BOP policy period and caused by an "occurrence";
   b. The underlying lawsuit does not allege any covered injury occurring during the BOP policy period and caused by an "occurrence";
   c. The "expected or intended" injury exclusion would apply to bar coverage for any allegations of willful or wanton conduct; and
   d. The "contractual liability" exclusion would apply to negate any coverage for the underlying lawsuit's breach of contract claim that may otherwise apply.

40. To the extent there are other bases upon which Nationwide General can properly deny coverage, Nationwide General reserves the right to plead them in the future.

41. The above contentions of Nationwide General are disputed by O'Connor.

42. Thus, an actual controversy exists between the parties, and pursuant to 28 U.S.C. §2201, this Court is empowered to declare the rights and obligations of the parties.

WHEREFORE, Plaintiff, NATIONWIDE GENERAL INSURANCE COMPANY, prays that this Honorable Court enter an Order finding and declaring that it does not owe a duty to defend or indemnify Defendant WILLIAM O'CONNOR against the allegations of the underlying lawsuit

11

under the BOP, and for such other and further relief as this Court deems fair and just under circumstances.

### Count III
### No Duty to Defend or Indemnify the AGA
### Under the Umbrella Policy

43. Nationwide Mutual incorporates by reference paragraphs 1 through 32, as if set forth fully herein.

44. Nationwide Mutual does not owe a duty to defend or indemnify the AGA under the Umbrella policy with respect to the underlying lawsuit, for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. The underlying lawsuit does not allege any "bodily injury" or "property damage" as required to trigger coverage under the Umbrella policy;
   b. The underlying lawsuit does not allege any covered injury occurring during the Umbrella policy period;
   c. The underlying lawsuit does not allege any covered injury occurring during the Umbrella policy period and caused by an "occurrence";
   d. The "expected or intended" injury exclusion would apply to bar coverage for any allegations of willful or wanton conduct; and
   e. The "contractual liability" exclusion would apply to negate any coverage for the underlying lawsuit's breach of contract claim that may otherwise apply.

45. To the extent there are other bases upon which Nationwide Mutual can properly deny coverage, Nationwide Mutual reserves the right to plead them in the future.

46. The above contentions of Nationwide Mutual are disputed by the AGA.

47. Thus, an actual controversy exists between the parties, and pursuant to 28 U.S.C. §2201, this Court is empowered to declare the rights and obligations of the parties.

WHEREFORE, Plaintiff, NATIONWIDE MUTUAL INSURANCE COMPANY, prays that this Honorable Court enter an Order finding and declaring that it does not owe a duty to defend or indemnify Defendant THE ANATOMICAL GIFT ASSOCIATION against the allegations of

the underlying lawsuit under the Umbrella policy, and for such other and further relief as this Court deems fair and just under circumstances.

## Count IV
### No Duty to Defend or Indemnify O'Connor
### Under the Umbrella Policy

48. Nationwide Mutual incorporates by reference paragraphs 1 through 32, as if set forth fully herein.

49. Nationwide Mutual does not owe a duty to defend or indemnify O'Connor under the Umbrella policy with respect to the underlying lawsuit, for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. The underlying lawsuit does not allege any "bodily injury" or "property damage" as required to trigger coverage under the Umbrella policy;
   b. The underlying lawsuit does not allege any covered injury occurring during the Umbrella policy period and caused by an "occurrence";
   c. The underlying lawsuit does not allege any covered injury occurring during the Umbrella policy period and caused by an "occurrence";
   d. The "expected or intended" injury exclusion applies to bar coverage for any allegations of willful or wanton conduct; and
   e. The "contractual liability" exclusion applies to negate any coverage for the underlying lawsuit's breach of contract claim that may otherwise apply.

50. To the extent there are other bases upon which Nationwide Mutual can properly deny coverage, Nationwide Mutual reserves the right to plead them in the future.

51. The above contentions of Nationwide Mutual are disputed by O'Connor.

52. Thus, an actual controversy exists between the parties, and pursuant to 28 U.S.C. §2201, this Court is empowered to declare the rights and obligations of the parties.

WHEREFORE, Plaintiff, NATIONWIDE MUTUAL INSURANCE COMPANY, prays that this Honorable Court enter an Order finding and declaring that it does not owe a duty to defend or indemnify Defendant WILLIAM O'CONNOR against the allegations of the underlying lawsuit

under the Umbrella policy, and for such other and further relief as this Court deems fair and just under circumstances.

                                                Respectfully submitted:
                                                **LINDSAY, PICKETT & POSTEL, LLC**

                                                By: _____
                                                       Christopher J. Pickett

Christopher J. Pickett
ARDC 06287096
Elizabeth Jedrasek
ARDC 6344177
**LINDSAY, PICKETT & POSTEL, LLC**
200 W. Madison Street, Suite 3850
Chicago, IL 60606
cpickettt@lpplawfirm.com
312-596-7779
ejedrasek@lpplawfirm.com
312-762-5154

14